# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>PI ADVERTISING, INC.<br><br>　　　　　　　　　　　DEBTOR<br>LINDA S. PAYNE,<br>CHAPTER 7 TRUSTEE<br><br>　　　　　　　　　　　PLAINTIFF<br>V.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA<br><br>　　　　　　　　　　　DEFENDANT | CASE NO. 14-42005<br>CHAPTER 7<br><br><br><br>ADVERSARY PROCEEDING NO. 16-040__ |

## ORIGINAL COMPLAINT

LINDA S. PAYNE, the duly appointed and acting Chapter 7 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate of PI Advertising, Inc., files this Original Complaint seeking to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550. In support of the relief requested, Plaintiff respectfully shows the Court as follows:

### I. PARTIES

1. Plaintiff, Linda S. Payne, is the Chapter 7 Trustee for PI Advertising, Inc. and in that capacity has standing to assert the claims asserted herein pursuant to 11 U.S.C. § 323.

2. Defendant The Regents of the University of California (the "UC Regents" or "Defendant") is a public entity of The State of California, which, upon information and belief, and for purposes of process may be served by delivering a copy of this Complaint and summons to its authorized agent, The Office of The General Counsel of The Regents of the University of California, 1111 Franklin Street, 8th Floor, Oakland, California 94607-5200.

## II. JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157, 1331 and 1334, and Rule 7001 of the Federal Rules of Bankruptcy Procedure and the Order of Reference for the United States District Court for the Eastern District of Texas. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). This action is brought pursuant to 11 U.S.C. §§ 548 and 550.

4. Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL AND PROCEDURAL BACKGROUND

5. On September 22, 2014 (the "Petition Date"), PI Advertising, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

6. Thereafter, the Office of the United States Trustee appointed Plaintiff, Linda S. Payne, as the interim chapter 7 Trustee for the Debtor's bankruptcy estate pursuant to Section 701 of the Bankruptcy Code. Plaintiff has since become the permanent trustee in accordance with Section 702(d) of the Bankruptcy Code, and in that capacity Plaintiff has the capacity to bring these claims pursuant to Sections 323(b), 541(a), 548 and 550 of the Bankruptcy Code.

7. The Debtor is a Texas corporation. As of the Petition Date, Jerry Bryant ("Bryant") was the Debtor's sole shareholder, director and the company's chief executive officer. In that capacity, Bryant was an insider of the Debtor at all relevant times pursuant to Section 101(31)(B)(i), (ii) and (iii) of the Bankruptcy Code.

8. UC Regents is a public entity under the laws of the State of California that governs the University of California and its subsumed campuses and medical centers. One of its campuses is the University of California, Santa Barbara ("UCSB").

9.  During the years 2012 through the Petition Date (the "Applicable Period"). Bryant's son, Hunter Bryant ("Hunter") attended and was a student enrolled in UCSB. Hunter, as Bryant's son, is an insider of the Debtor pursuant to Sections 101(31)(B)(vi) and 101(45) of the Bankruptcy Code.

**A.    Background of Debtor's Fraudulent Activities**

10. The Debtor, through Bryant, and IMGRP Productions, Inc. ("IMGRP"), an entity related to the Debtor, were in the business of providing marketing services to personal injury plaintiffs' attorneys and their law firms. These services principally involved the production of video advertisements for its clients' legal services. The Debtor's clients included Brian Loncar, P.C. ("Loncar") and Franklin D. Azar & Associates, P.C. ("Azar," and with Loncar, together referred to herein as, the "Clients").

11. In or around August, 2009, Loncar entered an agreement with Bryant and IMGRP, and any other entity in which Bryant acted, through which they memorialized an earlier agreement under which Bryant and his companies, including, the Debtor, would exclusively produce advertisements for Loncar in the State of Texas except with regard to the market involving the City of Amarillo, Texas. This agreement, however, provided Loncar the right to obtain the exclusive rights for such advertisements in Amarillo, a right that Loncar eventually exercised.

12. Azar entered a similar agreement with Bryant and the Debtor through which Bryant and the Debtor agreed to exclusively produce advertisements for Azar in and throughout the State of Colorado.

13. Prior to June, 2011, the Clients learned that Bryant and the Debtor were in violation of these agreements.

14. As a consequence, on June 7, 2011, the Clients filed their Plaintiffs' Original Petition, Application for Temporary Restraining Order, and Injunctive Relief initiating a certain action styled *Brian Loncar, PC et al. v. IMGRP Productions, Inc. et al.*, in the 298th Judicial District Court of Dallas County, Texas, Cause No. 11-07068 (the "State Action"). In this action the Clients sought damages against the named defendants, IMGRP, the Debtor, Bryant, Law Ads and Cody Bryant (the "State Defendants"), jointly and severally, for fraud, intentional and negligent misrepresentation, breach of good faith and fair dealing, breach of contract and conversion, and sought injunctive relief.

15. A Final Judgment was entered in the State Action against the State Defendants, except for Cody Bryant on April 3, 2012 (the "Final Judgment"). The Final Judgment awarded Azar and Loncar judgment in the respective amounts of $1 Million and $230,000 jointly against the Debtor, Bryant, IMGRP and Law Ads.

16. In March 2014, Azar commenced a garnishment action styled *Franklin D. Azar & Associates, P.C. v Frost National Bank, N.A.*, pending in the 298th Judicial District Court of Dallas County, Texas, Cause No. DC-14-02986 (the "Garnishment Action") with regard to the Debtor's bank account at Frost Bank. Through a certain Agreed Judgment signed on May 2, 2014, Azar obtained the garnishment of $12,116.71 from a bank account held by the Debtor at Frost Bank (the "Garnishment").

17. Knowing of Bryant's and the Debtor's breach of the marketing agreements with the Clients and the pending State Action, beginning in November 2011 and continuing through October 2014, Bryant, Cody Bryant ("Cody" or "Coety") and Lauren Atkinson ("Atkinson," and together with Bryant and Coety collectively, hereinafter, the "Insiders"), implemented a plan to transfer, hide and conceal the Debtor's funds and other assets for the purpose of delaying,

hindering and defrauding Debtor's creditors, especially the Clients.

18. Between November 2011 and February 2014 the Insiders opened various bank accounts in the name of the Debtor at Frost Bank, which accounts and the dates they were opened are as follows (collectively, the "Frost Accounts"):

| BANK ACCOUNT NO. | ACCOUNT NAME | DATE OPENED |
|---|---|---|
| xxx4053 | PI Advertising, Inc. | 11/04/2011 |
| xxx4037 | PI Advertising, Inc. (Spending Acc't) | 11/07/2011 |
| xxx4134 | PI Advertising, Inc. (Bill Acc't) | 11/07/2011 |
| xxx7559 | PI Advertising, Inc. (Shoot Acc't) | 11/07/2011 |
| xxx2694 | PI Advertising, Inc. (Production Acc't) | 12/04/2013 |
| xxx5758 | PI Advertising, Inc. | 02/20/2014 |

19. From January 2013 through May 2014, funds were funneled out of the Debtor's Frost Accounts by wire transfers, checks and through large cash withdrawals (collectively, the "Frost Transfers"). The majority of these checks were made payable to either Coety or Atkinson. During this period checks drawn on the Frost Accounts and made payable to Atkinson or cash withdrawals made by her totaled $419,017.21, and those made payable to Coety totaled $275,163.49.

20. Following commencement of the Garnishment Action in March 2014, Bryant caused the Debtor to cease depositing the Debtor's receivables in the Frost Accounts. Bryant further caused the opening of two separate bank accounts at Frost Bank; one in the name of Legal Production, Inc. d/b/a PI Advertising ("LPI"), Acc't No. xxx0314 (the "LPI Account"), and the jointly in the name of Coety and Atkinson, Acc't No. xxx4358 (the "Joint Account").

21. Despite the LPI Account and Joint Account not being in the name of the Debtor, these accounts were controlled by the Debtor through the actions and conduct of each of the Insiders.

22. Upon information and belief, following commencement of the Garnishment

Action the majority of revenue received and collected by the Debtor was deposited into either the LPI Account or the Joint Account. Upon information and belief, during this time the funds deposited into the LPI Account and Joint Account were the Debtor's funds from collection of its receivables. At all relevant times the Debtor, by and through Bryant, controlled the Joint Account

### B. Transfers to Regents

23. During the Applicable Period, the Debtor transferred funds to UC Regents and/or UCSB aggregating $19,479.26 drawn on its bank account at Frost Bank Account No. xxxxx4053 (collectively, the "Direct Transfers") on the dates and in the amounts as follows:

| PAYEE | CHECK NO. | PAYMENT AMOUNT | DATE |
|---|---|---|---|
| UC Regents | 1630 | $4,274.00 | 10/31/2012 |
| UC Regents | 1658 | $4,274.00 | 11/14/2012 |
| UC Regents | 1741 | $2,483.26 | 01/14/2013 |
| UC Regents | 1771 | $2,474.00 | 03/21/2013 |
| UC Regents | 1844 | $2,474.00 | 04/02/2013 |
| UC Regents | 2429 | $3,500.00 | 01/10/2014 |

24. During the Applicable Period, the Debtor transferred funds to UC Regents and/or UCSB aggregating $14,825.18 drawn on the Joint Account at Frost Bank No. xxxxx4358 (collectively, the "Indirect Transfers") on the dates and in the amounts as follows:

| PAYEE | CHECK NO. | PAYMENT AMOUNT | DATE |
|---|---|---|---|
| UC Regents | See footnote [1] | $6,500.00 | 04/07/2014 |
| UC Regents | 3094 | $6,500.00 | 04/18/2014 |
| UCSB | 3461 | $1,825.18 | 09/10/2014 |

25. The Debtor received no consideration or value in exchange for the Direct

---

[1] There is no check number associated with this transfer as the transfer was made through a temporary check on the account.

Transfers or the Indirect Transfers (collectively, the "Transfers").

26. At the time each of the Transfers were made the Debtor (i) was insolvent or became insolvent as a result of such transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (iii) intended to incur, or believed that that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (iv) made such transfer for the benefit of insiders of the Debtor, Bryant and Hunter.

## IV. CAUSES OF ACTION

### COUNT ONE – FOR AVOIDANCE - ACTUAL INTENT - FRAUDULENT TRANSFERS UNDER 11 U.S.C § 548(a)(1)(A)

27. Plaintiff reincorporates the allegations contained in Paragraphs 1 through 26 of the Complaint as though set forth in full herein.

28. The funds transferred by Debtor to UC Regents through the Transfers were funds of the Debtor. Thus, at the time of each of the Transfers the funds transferred constituted an interest of the Debtor in property.

29. Each of the Transfers were made on or after September 22, 2012; thus, the transfers were made within two (2) years prior to the Petition Date.

30. Each of the Transfers were made with the actual intent to hinder, delay, or defraud creditors, particularly the Clients. Each of the Insiders was keenly aware of the marketing agreements the Debtor and Bryant had with the Clients and the Debtor's obligations and responsibilities under them. The Insiders were further fully aware of the Debtor's business operations and that the Debtor was not complying with its contractual obligations under those agreements. Each of the Insiders knew of the commencement and pendency of the State Action, entry of the Final Judgment and the Garnishment Action. Despite this knowledge, the Insiders

opened new bank accounts – the Frost Accounts, then the LPI Account and Joint Account – for the purpose of concealing the Debtor's funds and other assets from the Clients and to hinder their efforts to obtain satisfaction of the Final Judgment. In making the Transfers the Debtor and each of the Insiders actually intended to hinder, delay and/or defraud the Clients (and other similarly situated creditors) as the Debtor held no other assets to satisfy the Final Judgment other than through collection of its accounts receivable from its clients which were deposited into the Frost Accounts and later diverted and concealed in the Joint Account.

31. At the time of each of the transfers the Debtor was insolvent as the aggregate sum of its liabilities was greater than all of its assets during the period October 2012 through the Petition Date, September 22, 2014. During this time frame the Debtor's assets were substantially less than the Final Judgment – a judgment that the Debtor could not satisfy. Furthermore, during this period the Debtor was generally not paying its debts as they came due.

32. The Transfers occurred immediately after entry of the Final Judgment in the State Action in which the Clients recovered judgment in excess of $1.3 Million, a judgment that the Debtor did not have sufficient assets to satisfy.

33. The Transfers were made for the benefit of insiders – Bryant and his son Hunter.

34. The Debtor received no consideration or value in exchange for transferring the funds represented by the Transfers.

35. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant avoiding each of the Transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

### COUNT TWO – AVOIDANCE AS FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 548(a)(2)

36. Plaintiff reincorporates the allegations contained in Paragraphs 1 through 35 of the Complaint as though set forth in full herein.

37. The funds transferred by Debtor to UC Regents through the Transfers were funds of the Debtor. Thus, at the time of each of the Transfers the funds transferred constituted an interest of the Debtor in property.

38. Each of the Transfers were made on or after September 22, 2012; thus, the transfers were made within two (2) years prior to the Petition Date.

39. Debtor received less than reasonably equivalent value in exchange for these transfers.

40. At the time of each of the transfers the Debtor was insolvent as the aggregate sum of its liabilities was greater than all of its assets during the period October 2012 through the Petition Date, September 22, 2014. During this time frame the Debtor's assets were substantially less than the Final Judgment – a judgment that the Debtor could not satisfy. Furthermore, during this period the Debtor was generally not paying its debts as they came due.

41. The Transfers occurred immediately after entry of the Final Judgment in the State Action in which the Clients recovered judgment in excess of $1.3 Million, a judgment that the Debtor did not have sufficient assets to satisfy.

42. Thus, at the time of such transfers the Debtor was (i) was insolvent, (ii) engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the Debtor's remaining assets or property was unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

43. Consequently, Plaintiff is entitled to judgment against Defendant avoiding the Transfers pursuant to 11 U.S.C. §548(a)(2).

### COUNT THREE - RECOVERY OF TRANSFERS PURSUANT TO 11 U.S.C. § 550(a)

44. Plaintiff reincorporates the allegations contained in Paragraphs 1 through 43 of the Complaint as though set forth in full herein.

45. The Transfers are avoidable pursuant to Section 548 of the Bankruptcy Code.

46. UC Regents, Defendant herein, is the initial transferee of the Transfers.

47. Recovery of these transfers or the value of such transfers will benefit the creditors of the Debtor's bankruptcy estate.

48. As a consequence, Plaintiff is entitled to judgment against UC Regents for recovery of the Transfers in the amount set forth herein, and the costs of this adversary proceeding pursuant to 11 U.S.C. § 550(a).

### V. PRAYER

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against:

1. Defendant UC Regents avoiding the Transfers identified above pursuant to 11 U.S.C. § 548(a)(1) or, alternatively, 11 U.S.C. § 548(a)(2), and awarding her recovery of such Transfers or the value of same pursuant to 11 U.S.C. §550(a);

2. Attorneys' fees and costs to the extent allowed by applicable law; and

3. For such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Mark A. Weisbart
Mark A. Weisbart
Texas Bar No. 21102650
James S. Brouner
Texas Bar No. 03087285
THE LAW OFFICE OF MARK A. WEISBART
12770 Coit Road, Suite 541
Dallas, Texas 75251
(972) 628-4903 Phone
(972) 628-4905 Fax
mark@weisbartlaw.net
jbrouner@weisbartlaw.net

COUNSEL FOR PLAINTIFF